Mr. Justice Cox
delivered the opinion of the Court:
This is.an application for a mandamus against the Commissioner, requiring him to take up and decide an alleged appeal from the register and receiver of the Land Office at Pueblo, Col.
Mexico, before the treaty of Guadalupe Hidalgo, had granted a large tract of land to certain Vigil and St. Vrain. By an act of Congress passed in i860, this was confirmed to the extent of 97,650 acres, but it was provided that surveys should be made of tracts occupied by parties holding under Vigil and St. Vrain. And by another act of 1869, 15 Stat., *588 275, it was provided that the claims of parties thus holding, which might be established to the satisfaction of the register and receiver of.the proper land district, should be adjusted according to the subdivisional lines of survey, so as to include the lands so settled upon or purchased, and the arrears of the same should be deducted and excluded from the just limits of the claim of Vigil and St. Vrain; and on the adjustment of the claims the surveyor-general was to furnish to the claimants approved plats which should be evidence of title. ,
It turned out, on the survey, that the aggregate of the claims exceeded the total amount of land allowed to this grant by the United States, so that the several claimants were at once brought into conflict, inasmuch as the claims of no one of them could be fully satisfied except at the expense of some other one.
The register and receiver awarded to William Craig 71,25 acres. The consequence was that the relator in this case and a number of other claimants received much less land than they claimed. The relator and others appealed from the decision of the register and receiver to the commissioner of the land office in 1874.' Craig claimed before the commissioner that the decision of the register and receiver was final and moved to dismiss that appeal. The commissioner — then Burdett — referred the question to the Secretary of the Interior — then Delano — who advised that the commissioner ought to entertain the appeal. His advice was founded upon the act of Congress of July 4, 1836, found at 5 Statutes at Large, page 107, which provides:
“ That from and after the passage of this act, the executive duties now prescribed, or which may hereafter be prescribed by law, appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to private claims of lands and the issuing of patents for 'all grants of land under the authority of the Government of the United States, shall be subject to the supervision and control of the Commis *589 sioner of the General Land Office, under the direction of the President of the United States.”
Taking advantage of this last clause of the law, Craig appealed to the President, who consulted the Attorney-General, and then, on the 2d of March, 1877, made an order directing the Commissioner of the Land Office to instruct the Surveyor-General to deliver to Craig an approved- plat of the land adjudged to him by the-register and receiver of the Pueblo land district. This was done under the direction of the then Secretary of the Interior, Chandler, and on January 8, 1878, a patent for the land was delivered to Craig. This action necessarily overruled and disposed of the relator’s appeal, because it took away the whole subject-matter to which it related, by transferring from the United States to Craig, the complete title to the land, which was in part claimed by the relator.
In June, 1888, more than ten years afterwards, the relator applied to the then commissioner of the land office to take up and consider, as a still pending appeal, the appeal aforesaid, taken in 1874. The assistant commissioner, Anderson, considered the application and denied it, holding the former action of the executive to be binding and conclusive. An appeal «was taken to the Secretary of the Interior, which was dismissed on the xoth of September, 1891.
The present application was made on the 19th of November, 1891.
It appears, then, that the appeal of the relator taken in 1874, from the register and receiver of the Pueblo land office,» was definitely decided and disposed of in 1877, by both the Secretary of the Interior and the Commissioner of the General Land Office, who were predecessors of the present incumbents of those offices.
The present application is for a mandamus requiring the present Commissioner of the Land Office to take up and act upon the appeal taken from the register and receiver of the Pueblo land 'office, as an appeal still pending and undisposed of.
*590 In point of fact, the appeal was, as we have seen, acted upon and disposed of, and the only ground upon which the present application could be granted would be, that it is the plain ministerial duty of the present commissioner to review and reverse the decision of his predecessor ¡and to treat the previous action of the Executive Department as a mere .nullity.
Whether the action of the previous commissioner in overruling the appeal of 1874, from the register and receiver, in obedience to the President’s direction, was erroneous or not, it was not a nullity, for it was within the jurisdiction of the commissioner to- decide upon the appeal, and he did so, and from that moment it ceased to be pending before him.
If >an application had been made for a mandamus to require him to consider the appeal when it was yet unacted upon by him, the relator might, perhaps, have been entitled to it, but after it was decided and disposed of it is quite a different question whether his successor in office can be called on to consider it.
There are, doubtless, many questions which it is incumbent on the officers of the Executive Departments to decide, and if they should refuse even to consider them, it may be that the parties interested would be entitled to the remedy of mandamus to compel a determination of them by the proper officers. But when they are once decided by the officers having jurisdiction to decide them, we know of no general law which makes it the duty of their successors in office to reopen such questions and decide them anew, and certainly no such law applicable to a case like the present. And yet, unless there be a plain duty of this kind, as to which there is no room for discretion, the remedy by mandamus is inadmissible.
Not only is it not the duty of the present commissioner to review the action of his predecessor, with’ a view to reversal, but it is not in his power to do so.
The decision of the department in 1877 resulted in a patent from the United States to Craig of the lands awarded *591 to him by the register and receiver. This might, perhaps, have been prevented by the relator, by a .timely application for a mandamus or injunction; but now that the patent has issued, it could.never be recalled by the Executive Departments. It could only be set aside by a suit in equity by the United States, on the ground of fraud. A reconsideration of the questions which antedated the granting of the patent would be perfectly useless.
This case is controlled, as we think, by a decision only recently rendered in the Supreme Court of the United States, in the case of John W. Noble et al., appellants, vs. The Union River Logging Railroad Company, 147 U. S., 165. The act of Congress of March 3, 1875, provided that a right of way through the public lands of the United States be granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization, under the same, h> the extent of one hundred feet on each side of the central line of said road. Section 4 of the act provides that any railroad company desiring to secure the benefits of the act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its-road; and upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all su.ch lands over which such right of way shall pass shall be disposed of subject to such right of way.
The Union River Logging Railroad Company had been incorporated, and had supplied the evidence provided for in the act of Congress. A profile of the road had been submitted to Secretary Vilas, and he had approved it, and it was noted upon the plats in the office. Afterwards, upon *592 the suggestion that this railroad company was not a railroad company for public purposes, but merely for private business interests of the company, Secretary Noble undertook to reconsider and reverse the action of his predecessor.
It is sufficient to refer to a small part of the opinion of the court. They say:
“Upon the other hand, if the patent be for lands which the land department has authority to convey, but it was imposed upon, or was induced by false representations to issue a patent, the finding of the department upon such facts cannot be collaterally impeached, and the patent can only be avoided by proceedings taken for that purpose. As was said in Smelting Company vs. Kemp, 104 U. S., 636-640:
“‘In that respect they (the officers of the land department) exercise a judicial function, and therefore it has been held in various instances by this court that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. ... In Moore vs. Robbins, 96 U. S., 530, it was said directly that it is a part of the daily business of officers of the land department to decide when a party has by purchase, by pre-emption, or by any other recognized mode, established a right to receive from the government a title to any part of the public domain. This decision is subject to an appeal to the Secretary of the Interior, if taken in time; but if no such appeal be taken, and the patent issued under the seal of the United States, and signed by the President, is, delivered to and accepted by the party, the title of the government passes with this delivery. With the title passes away all authority of control of the Executive Department over the land and over the title which it has conveyed. . . . The functions of that department necessarily cease when the title has passed from the government.’
“We think the case under consideration falls within this latter class. The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled *593 to the benefit of the grant was one which it was -competent for the Secretary of the Interior to decide, and when decided, and his'approval was noted upon the plats, the first section of the act vested the right of way in the railroad company. . . . If it were made to appear that the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained. A revocation of the approval of the Secretary of the Interior, however, by his successor in office, was an attempt to deprive the plaintiff of its property without due process of law, and was, therefore, void. As was said by Mr. Justice Greer, in U. S. vs. Stone, 2 Wallace, 525-535 =
“ ‘ One officer of the land office is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court.’ ”
According to this authority, not only was it not the duty of the present commissioner of -the land office to take hp and review the action of his predecessor, but had he attempted it, we would be bound to enjoin him from doing so, upon a proper application.
In addition it may be mentioned that this application was made fourteen years after the gppeal was taken to the commissioner, and was disposed of in the manner already referred to. We think it is incumbent upon ús, therefore, on all these grounds to deny the application for a mandamus.